UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CYRIL CURTIS,

                        Plaintiff,

                -against-

ROCKLAND COUNTY, OFFICER PHILLIP
FANTASIA, OFFICER JOHN CASEY, OFFICER
RAYMOND LUND, OFFICER MICHAEL
VIGILLETI, INVESTIGATOR JOE ALVAREZ,

                        Defendants.

**MEMORANDUM OPINION
AND ORDER**

21-CV-04294 (PMH)

PHILIP M. HALPERN, United States District Judge:

Cyril Curtis ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983 against Rockland County, Investigator Joe Alvarez ("Alvarez"), Officer John Casey ("Casey"), Officer Phillip Fantasia ("Fantasia"), Officer Raymond Lund ("Lund"), and Officer Michael Vigilleti ("Vigilleti" and collectively, "Defendants"). Plaintiff alleges that Defendants violated his constitutional rights during the July 3, 2018 search of his home, his six-hour pretrial detention on the same date, and his subsequent imprisonment. (Doc. 9, "FAC").

For the reasons set forth below, Defendants' motions to dismiss are GRANTED.

## BACKGROUND

### A.      Procedural Background

Plaintiff filed this action on May 10, 2021. (Doc. 2). The original Complaint named Rockland County Drug Task Force, Rockland County Office of the Sherriff Department, Sherriff Louis Falco III, Officer Phillip Fantasia, Officer John Casey, John Doe 1, John Doe 2, John Doe 3, and John Doe 4 as Defendants. (*Id.*). On June 14, 2021, the Court issued a *Valentin* Order which dismissed Plaintiff's claims against Rockland County Drug Task Force and Rockland County

Office of the Sheriff Department and added Rockland County as a Defendant. (Doc. 6).[1] The Court further ordered the Rockland County Law Department to identify the John Doe defendants. (*Id.* at 3). On July 9, 2021, Plaintiff filed his First Amended Complaint ("FAC"), which dropped Sheriff Louis Falco III as a Defendant.[2] (Doc. 9). On August 12, 2021, Rockland County filed a letter in response to the Court's June 14, 2021 *Valentin* Order identifying John Doe 1 as Officer Raymond Lund, John Doe 2 as Officer John Casey, John Doe 3 as Officer Michael Vigiletti, and John Doe 4 as Investigator Joe Alvarez. (Doc. 13). On August 13, 2021, the Court ordered the substitution of the individuals identified in Rockland County's August 12, 2021 letter and terminated Sheriff Louis Falco III as a defendant. (Doc. 14).

On August 31, 2021, Plaintiff filed an unauthorized Second Amended Complaint ("SAC"). (Doc. 18).[3] The caption of the SAC referred to four "John Doe" defendants that had already been identified by Rockland County and substituted by the Court's August 13, 2021 Order. (*See* Doc. 14). Accordingly, on September 16, 2021, the Court issued an Order once again terminating the John Doe defendants as parties and restoring Officer Lund, Officer Vigilleti, and Investigator Alvarez as parties. (Doc. 29). Accordingly, Plaintiff's claims in the FAC, as modified by the Court's Orders as described above, are pressed against Rockland County, Lund, Fantasia, Casey, Vigiletti, and Alvarez.

---

[1] Rockland County Drug Task Force and Rockland County Office of the Sheriff Department were dismissed as Defendants because neither entity qualified as a "person" within the meaning of 42 U.S.C. 1983. (Doc. 6 at 2).

[2] Plaintiff's First Amended Complaint was timely filed within 21 days of service of the original Complaint pursuant to Fed. R. Civ. P. 15(a).

[3] Plaintiff did not file a motion for leave to amend the FAC pursuant to Fed. R. Civ. P. 15(a)(2). The Court therefore strikes Plaintiff's SAC as untimely and unauthorized and construes the FAC as the operative pleading for the purposes of Defendants' motions to dismiss. *See Ko v. JP Morgan Chase Bank, N.A.*, 730 F. App'x 62, 64 (2d Cir. 2018) (affirming the striking of an unauthorized amended complaint where plaintiff did not seek leave to amend).

The Court granted Defendants leave to file motions to dismiss during the pre-motion conference on March 1, 2022, and ordered that Defendants file joint moving and reply briefs in support of their motions. (Doc. 50). On March 29, 2022, Defendants filed their motions to dismiss and joint moving brief. (Doc. 51; Doc. 52; Doc. 53; Doc. 54 ("Defs.' Br."); Doc. 55). Plaintiff filed his opposition brief on May 3, 2022. (Doc. 56, "Opp. Br."). Defendants filed their joint reply brief on May 16, 2022. (Doc. 59, "Reply Br.").

    **B.**    <u>**Factual Background**</u>

Plaintiff alleges that, on July 3, 2018, he was pulled over by Fantasia, Casey, and Lund. (FAC ¶¶ 1-3). Fantasia, Casey, and Lund, during the stop, informed Plaintiff that they had a search warrant for his person, vehicle, and home and provided Plaintiff with a copy of the warrant to search for drugs and drug paraphernalia. (*Id*. ¶¶ 3-5). Plaintiff was handcuffed after Defendants searched his vehicle and was transported to the police station in Haverstraw, New York. (*Id.* ¶ 8). Upon arrival at the police station in Haverstraw, Alvarez and Vigilleti placed Plaintiff in a holding cell "for 6 hours with no phone calls and nothing to eat or drink." (*Id*. ¶ 9).

Plaintiff alleges that, while he was held at the Haverstraw police station, Fantasia, Casey, and Lund provided his wife with a copy of the search warrant and searched Plaintiff's home, but did not find any drugs or drug paraphernalia. (*Id.* ¶¶ 10-13). During the search of Plaintiff's home, Fantasia, Casey, and Lund located and broke open a locked safe which contained an "unloaded 9MM [Smith & Wesson] handgun" and also found "the bullets for [that] handgun inside a case" under Plaintiff's bed. (*Id.* ¶¶ 14-15). After finding the handgun and ammunition, Fantasia and Casey left Plaintiff's home while Lund stayed behind. (*Id.* ¶ 15). Fantasia and Casey returned five hours later with a new warrant, which allowed for search and seizure of "[f]irearms, handguns, including 9mm handgun, bullets, ammunition, magazine, weapons, and marihuana." (*Id.* ¶ 19, Ex.

B). Casey and Fantasia provided Plaintiff's wife with a copy of the second warrant. (*Id.* ¶ 19). Plaintiff alleges that Defendants Casey and Fantasia "forged a Judge['s] signature" or otherwise "[a]lter[ed] and tamper[ed]" with the second warrant. (*Id.* ¶ 22).

Following the search of his home, Plaintiff was charged, and subsequently convicted for violation of New York Penal Code § 265.03, Criminal Possession of a Weapon in the Second Degree.[4] Plaintiff is currently serving out his sentence at Marcy Correctional Facility. (FAC at 2).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

---

[4] *See* New York Dep't of Corr. and Cmty. Supervision ("DOCCS") Incarcerated Lookup, available at https://nysdoccslookup.doccs.ny.gov/ (information obtained for DIN# 19-A-0921). The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information. See *Williams v. Novoa,* No. 19-CV-11545, 2022 WL 161479, at *1 (S.D.N.Y. Jan. 18, 2022) (taking judicial notice of plaintiff's DOCCS inmate lookup information); *Johnson v. City of New York*, No. 15-CV-8195, 2017 WL 2312924, at *2 n.3 (S.D.N.Y. May 26, 2017) (collecting cases). The corresponding conviction and biographical information listed in DOCCS's public records match the information provided by Plaintiff his pleadings. (Doc. 9 at 2 (identifying Plaintiff's DOCCS Department ID Number as 19-A-0921), ¶ 21 (alleging that Plaintiff was charged with "[c]riminal [p]ossession of a weapon in the second degree").

The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). The Court has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

"Even in a *pro se* case, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris*, 572 F.3d at 72 (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170.

## ANALYSIS

Plaintiff seeks relief under 42 U.S.C. § 1983. (FAC at 1). That statute provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.

"[T]his language . . . creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (first alteration in original)). Reading the pleading broadly and interpreting the allegations to raise the strongest arguments they suggest, Plaintiff asserts claims for relief pursuant to 42 U.S.C. § 1983 for unlawful search and seizure, deliberate indifference to medial needs, and unlawful denial of a telephone call.

## I.    <u>Statute of Limitations</u>

This action concerns Plaintiff's arrest and the execution of search warrants at his vehicle and home on July 3, 2018. The statute of limitations governing 42 U.S.C. § 1983 claims in New York is three years. *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). Plaintiff's complaint was not amended to name Defendants Lund, Vigiletti, and Alvarez until August 13, 2021, more than three years after the events giving rise to his claims.

An otherwise untimely amendment will survive if it is deemed to "relate back" to the original complaint. *See* Fed. R. Civ. P. 15(c)(1); *see also Sutton v. Rodriguez*, No. 18-CV-01042, 2021 WL 2894834, at *3 (S.D.N.Y. July 9, 2021). The federal standard for relation back when an amendment to the pleadings adds a party to an action, set forth in Rule 15, provides, in relevant part, that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment changes the party or the naming of the party against whom a claim is asserted . . . ." Fed. R. Civ. P. 15(c)(1)(C). A lack of knowledge about a defendant's identity, however, cannot be characterized as a "mistake of identity" for purposes of Rule 15(c)(1)(C). *Hogan v. Fischer*, 738 F.3d 509, 517-18 (2d Cir. 2013); *see also Cotto v. City of New York*, 803 F. Appx. 500, 503 (2d Cir. 2020). As a result, Rule 15(c)(1)(C) "preclude[s] relation back" in cases like this one,

where a plaintiff names John Doe defendants because he does not know the identity of the defendants until the statute of limitations has run. *Id.* (citing *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999)).

An amendment may also relate back, however, when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). A plaintiff bringing a § 1983 claim can therefore rely on New York's relation back rules to substitute a named defendant for a John Doe defendant. *See Hogan*, 738 F.3d at 518–19; N.Y. CPLR § 1024. For the amendment to relate back under New York law, a plaintiff must satisfy two requirements. *Hogan*, 738 F.3d at 519. First, the plaintiff must "exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name" and second, "the party must describe the John Doe party in such form as will fairly apprise the party that he is the intended defendant." *Id.* (citation omitted).

Here, Plaintiff cannot satisfy the first requirement. Despite the events giving rise to Plaintiff's claims occurring in 2018, "'Plaintiff appears to have expended no efforts at all to identify the Individual Defendants in the three years that followed,' waiting until the statute of limitations had nearly run to file his complaint." *JCG v. Ercole*, No. 11-CV-06844, 2014 WL 1630815, at *14 (S.D.N.Y. Apr. 24, 2014) (quoting *Williams v. United States*, No. 07-CV-03018, 2010 WL 963474, at *12 (S.D.N.Y. Feb. 25, 2010), *adopted by* 2014 WL 2769120 (S.D.N.Y. June 18, 2014). In that time, he could have served discovery demands upon the known parties, sought disclosures pursuant to a Freedom of Information Law ("FOIL") request, or written letters to the Attorney General's Office. *Cf. Hogan*, 738 F.3d at 519 (plaintiff met first requirement under § 1024 in that he "diligently sought to identify the "John Doe defendants" by submitting "multiple discovery requests to the Attorney General's office"); *Mabry v. New York City Dept. of*

*Corrections*, No. 05-CV-08133, 2008 WL 619003, at *6 (S.D.N.Y. March 7, 2008) (allowing relation-back where plaintiff's first complaint was well within statute of limitations and she "aggressively sought the identities of the defendants"). Filing suit weeks before the statute of limitations expires, without more, is insufficient to show due diligence under § 1024. *See, e.g., Vasconcellos v. City of New York*, No. 12-CV-08445, 2014 WL 4961441, at *9 (S.D.N.Y. Oct. 2, 2014) (declining to apply § 1024 because "Vasconcellos did nothing to exercise due diligence prior to the running of the statute-or, for that matter, after it ran"); *Jones v. City of New York*, 571 F. Supp. 3d 118, 131 (S.D.N.Y. 2021) (holding that an incarcerated *pro se* Plaintiff did not exercise due diligence where he failed to take any actions "to uncover the John and Jane Doe defendants' identities prior to the expiration of the limitations period"); *Liverpool v. Davis*, 442 F. Supp. 3d 714, 727 (S.D.N.Y. 2020) (same).

In light of Plaintiff's failure to exhibit diligence in attempting to ascertain the identity of the John Doe defendants, the claims against Defendants Lund, Vigiletti, and Alvarez do not relate back to the original Complaint and are, therefore, barred by the statute of limitations. Accordingly, Defendants Lund, Vigiletti, and Alvarez are dismissed from this action.

## II.   **Unlawful Search and Seizure Claim**

Plaintiff alleges that the July 3, 2018 search of his home and subsequent seizure of a firearm was conducted pursuant to an invalid warrant in violation of his Fourth Amendment rights. (FAC ¶¶ 13-16). The Supreme Court's decision in *Heck* "precludes the use of § 1983 suits for damages that necessarily have the effect of challenging existing state or federal criminal convictions." *Poventud v. City of New York*, 750 F.3d 121, 124 (2d Cir. 2014) (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)). Under *Heck*, if a judgment in a plaintiff's favor would "necessarily imply the invalidity of his conviction or sentence," the complaint must be dismissed. 512 U.S. at 487. The

bar established in *Heck* applies regardless of whether a plaintiff seeks damages or injunctive relief. *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

Plaintiff's claim relates to the search and seizure of the weapon that is the subject of his conviction and sentence. (FAC ¶ 21). To prevail on his search and seizure claim, Plaintiff would have to establish that the firearm should not have been seized and his subsequent conviction was therefore invalid. A judgment in Plaintiff's favor on the unlawful search and seizure claim would clearly imply the invalidity of his conviction, and the claim is therefore barred by *Heck v. Humphrey*.

Plaintiff's claim also fails under a separate ground articulated in *Heck*. "[W]hen seeking compensatory damages for an allegedly unreasonable search while the underlying conviction still stands, a plaintiff may only recover for an injury other than the harm caused by the conviction and the imprisonment resulting therefrom." *Stegemann v. Rensselaer Cnty. Sheriff's Off.*, No. 20-3316-CV, 2021 WL 5492966, at *2 (2d Cir. Nov. 23, 2021) (citing *Heck*, 512 U.S. at 487 n.7). Here, Plaintiff has not alleged any injury other than those related to his conviction and subsequent imprisonment, which he asserts resulted from the purportedly invalid warrant. (FAC at 14). All the damages sought by Plaintiff are directly related to the alleged harm caused by his conviction and resulting imprisonment. (*Id.* at 14). For example, Plaintiff seeks damages for the "los[s] of [his] pension and 401(k) plan," for "the suffering and pain [caused by] being incarcerated for 3 years," for "future pain and suffering" caused by not being able to find a job due to his incarceration, for "mental anguish and mental pain over the years being incarcerated," and finally for "unlawful imprisonment." (*Id.*). Each of these injuries for which Plaintiff seeks damages are a direct result of his conviction and imprisonment. Thus, even if Plaintiff's unlawful search and

seizure claim does not call his conviction into question—which it necessarily does—Plaintiff cannot recover any damages for these injuries unless and until his conviction is overturned.

Plaintiff's Fourth Amendment claim for unlawful search and seizure is, accordingly, dismissed.

### III.   <u>Deliberate Indifference to Medical Needs Claim</u>

Plaintiff alleges that Defendants violated his Eighth Amendment rights by placing him in a holding cell for 6 hours without any food or water. (FAC ¶¶ 9, 18). As an initial matter, "to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Adams v. Simone*, 759 F. App'x 82, 84 (2d Cir. 2019) (citing *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)). Here, Plaintiff alleges that only Vigiletti and Alvarez were present during his pretrial detention. (FAC ¶¶ 8-9). Given that Plaintiff does not allege that Fantasia, Casey, and Lund were involved in Plaintiff's pretrial detention, or any of the alleged constitutional deprivations that occurred during that detention, Plaintiff's claims stemming from the six-hour pretrial detention are dismissed as to Fantasia, Casey, and Lund.[5]

Although Plaintiff alleges that this deprivation violated his Eighth Amendment rights, a pretrial detainee's § 1983 claim of unconstitutional conditions of confinement is analyzed under the Due Process Clause of the Fourteenth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). "To state a deliberate indifference claim under the Fourteenth Amendment, plaintiff's allegations must satisfy two prongs: an objective prong and a *mens rea* prong." *King v. Falco*, No.

---

[5] Plaintiff also fails to allege that Defendants Vigiletti and Alvarez were personally involved in the search of Plaintiff's home and fails to allege that Defendant Lund was personally involved in Plaintiff's pretrial detention. Even if the claims against Defendants Vigiletti, Alvarez, and Lund were not dismissed on statute of limitations grounds, the Court would dismiss Plaintiff's unlawful search and seizure claim as to Defendants Vigiletti and Alvarez and the deliberate indifference claims as to Defendant Lund for failure to allege personal involvement.

16-CV-06315, 2018 WL 6510809, at *7 (S.D.N.Y. Dec. 11, 2018). Under the first prong, the detainee's medical needs must be objectively "serious." *See Flemming v. Velardi*, No. 02-CV-04133, 2003 WL 21756108, at *2 (S.D.N.Y. July 30, 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To determine whether a detainee's medical needs are sufficiently serious, courts consider "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 701-02 (2d Cir. 1998) (internal quotations omitted).

Under the second prong, "the facts must give rise to an inference that the persons charged with providing medical care knew of those serious medical needs and intentionally disregarded them." *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000). A plaintiff can demonstrate deliberate indifference by alleging facts that demonstrate that a defendant "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Chance*, 143 F.3d at 702 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Plaintiff's deliberate indifference claim fails at the first prong. The allegations in Plaintiff's pleading demonstrate that Plaintiff did not suffer a sufficiently serious injury to trigger constitutional protection. Although he alleges that he was placed in a holding cell for 6 hours without any food or water, Plaintiff makes no allegation that he had any need for food or drink and no allegation that the lack of those accommodations for several hours had any untoward consequences whatsoever. Even if Plaintiff had alleged as much, "there is 'a *de minimis* level of imposition with which the Constitution is not concerned.'" *Lynch v. City of New York*, 952 F.3d 67, 77 (2d Cir. 2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 n.1 (1979)) (holding that a protestor who was detained for five hours and punitively denied food, drink, and access to a

bathroom failed to state a Fourteenth Amendment claim); *see also Rivera v. Connolly,* No. 18-CV-03958, 2022 WL 1785313, at *5 (S.D.N.Y. June 1, 2022) ("Nothing about Defendant's conduct, even in Plaintiff's version of the story, is 'repugnant to the conscience of mankind' or rises to the dignity of an Eighth Amendment violation."); *Simmons v. Kelly,* No. 06-CV-06183, 2009 WL 857410, at *7 (S.D.N.Y. Mar. 31, 2009) ("Courts in this jurisdiction have held that a deprivation of food and water during detention that only lasted a few hours did not rise to the level of a constitutional violation."); *Dzwonczyk v. Syracuse City Police Dep't*, 710 F. Supp. 2d 248, 269 (N.D.N.Y. 2008) (holding that lack of food and water overnight was not a constitutional violation); *Webster v. City of New York*, 333 F. Supp. 2d 184, 200 (S.D.N.Y. 2004) (holding that failure to provide a detainee with food and water "for the few hours" that they were held is "insufficient as a matter of law" to support a deliberate indifference claim). Plaintiff's allegation that he did not receive food and water during his 6-hour detention, without more, does not rise to the level of a constitutional violation and, as such, his deliberate indifference claim is dismissed.

IV.   **Unlawful Denial of a Telephone Call**

Plaintiff alleges that Defendants violated his constitutional rights by depriving him access to a telephone call during his 6-hour detention. (FAC ¶ 18). However, Plaintiff does not have a constitutional right to a phone call. *Hodge v. Ruperto*, 739 F. Supp. 873, 876 (S.D.N.Y. 1990) (holding that there is "no constitutional requirement that a detainee be permitted a telephone call upon completion of booking formalities"); *see also Marcus v. Bush*, No. 11-CV-04049, 2013 WL 2154786, at *4 (E.D.N.Y. May 17, 2013) (holding that denying a detainee "permission to call his counsel . . . for a one hour period" did not amount to a constitutional violation). Therefore, the alleged denial of a telephone call during Plaintiff's 6-hour detention cannot serve as the basis for a § 1983 claim. This claim for relief is, therefore, dismissed.

**V.**   ***Monell* Claim**

By proceeding against Rockland County under 42 U.S.C. § 1983, the Court construes Plaintiff's Complaint to press a *Monell* claim. Such a claim requires that Plaintiff plead: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the injury." *Lockett v. City of Middletown*, No. 19-CV-08255, 2021 WL 1092357, at *5 (S.D.N.Y. Mar. 22, 2021) (quoting *Triano v. Town of Harrison, New York*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012)). A *Monell* claim, however, "cannot lie in the absence of an underlying constitutional violation." *Galgano v. Cnty. of Putnam*, No. 16-CV-03572, 2020 WL 3618512, at *9 (S.D.N.Y. July 2, 2020) (quoting *DeRaffele v. City of New Rochelle*, No. 15-CV-00282, 2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017)). Notwithstanding any other pleading deficiency in this case, this claim must be dismissed because Plaintiff has not pled an underlying constitutional violation. *See, e.g.*, *Schultz v. Inc. Vill. of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

Even if Plaintiff sufficiently pled a constitutional violation, his *Monell* claim would nevertheless fail "for lack of facts supporting the existence of a municipal policy or practice, because Plaintiff only alleges facts relating to his own claim." *Toussaint v. Cnty. of Westchester*, No. 21-CV-03817, 2022 WL 2834108, at *9 (S.D.N.Y. July 20, 2022); *see also Smith v. Westchester Cnty.*, No. 19-CV-01283, 2019 WL 5816120, at *5 (S.D.N.Y. Nov. 7, 2019) (dismissing *Monell* claim where plaintiff "describe[d] only his own experiences"); *Oriental v. Vill. of Westbury*, No. 18-CV-03878, 2019 WL 4861413, at *4 (E.D.N.Y. Oct. 2, 2019) (dismissing *Monell* claim where "the complaint contain[ed] only a detailed account of plaintiffs' own experiences"). Plaintiff's *Monell* claim is, accordingly, dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are GRANTED.[6]

While "[d]istrict courts should frequently provide leave to amend before dismissing a pro se complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Here, the FAC is dismissed with prejudice because any amendment would be futile.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum Opinion and Order would not be taken in good faith, and *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court is respectfully directed to: (i) terminate the motion sequences pending at Docs. 51, 53, and 55; (ii) mail a copy of this Memorandum Opinion and Order to Plaintiff; and (iii) close this case.

**SO ORDERED:**

Dated:    White Plains, New York
         October 28, 2022

_____
PHILIP M. HALPERN
United States District Judge

---

[6] Given the conclusions reached herein, the Court need not and does not address Defendants' arguments regarding qualified immunity. (Defs.' Br. at 9.)

14